**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DAVID C. ONYIUKE,

                    Plaintiff,

        v.                                                    Civ. Action No. 09-891  (KSH)

CHEAP TICKETS, INC.;
VIRGIN ATLANTIC, LTD,

                    Defendants.                               **OPINION**

**Katharine S. Hayden, U.S.D.J.**

I.        **INTRODUCTION**

        Plaintiff David C. Onyiuke has initiated this action against Virgin Atlantic Ltd. ("Virgin

Atlantic") and Trip Network, Inc. d/b/a Cheaptickets.com ("Cheaptickets"), alleging breach of

contract arising from the cancellation of service between Newark Liberty International Airport

and Gatwick Airport in London, England.   In addition, he makes common law claims of

conversion against both defendants because he was unable to receive an immediate refund of his

ticket price.[1]   Onyiuke attempts to invoke the jurisdiction of this Court on the basis of diversity

of citizenship under 28 U.S.C. § 1332.  Each defendant now brings a motion to dismiss pursuant

to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"), by arguing that the available

sum of money in controversy does not exceed $75,000, so subject matter jurisdiction on the basis

---

[1] Plaintiff also alleges that defendants have violated various provisions of the New Jersey Consumer Fraud Act, N.J.
S.A. § 56:8-2.18, although he does not list these in separate counts in the complaint.  Instead, he uses these alleged
violations to support his more general complaints of breach of contract and conversion.

of diversity is improper.  Virgin Atlantic also argues that Onyiuke failed to state an adequate claim for relief under FRCP Rule 12(b)(6) because his claims were preempted by an existing federal statute.  The Court agrees.[2]

## II.    STATEMENT OF FACTS

The following facts are drawn from the allegations in Onyiuke's amended complaint [D.E. 7], unless otherwise indicated.

On or about August 11, 2008, plaintiff David Onyiuke ordered plane tickets through the online travel site Cheaptickets.com, owned by defendant Trip Network, Inc. (Am. Compl. ¶ 5.) Onyiuke planned the trip so that he could attend his sister's wedding. (Pl.'s Br. ¶ 20.)  Pursuant to this flight arrangement, he was scheduled to fly from Newark Liberty International Airport in Newark, New Jersey to Gatwick Airport in London, England on December 12, 2008 on a plane owned and operated by Continental Airlines, which undertakes the flight obligations from New Jersey of defendant Virgin Atlantic.  (Am. Compl. ¶ 6.)  Onyiuke was then scheduled to fly—via Virgin Nigeria Airlines—on a connecting flight from Gatwick Airport to his final destination, Murutala Mohammad International Airport in Lagos, Nigeria. (*Id.*)  Under this arrangement, plaintiff would embark on a return flight to New Jersey on January 12, 2009.  (*Id.*)  Onyiuke paid a total of $1,563.70 for the flight.  (*Id.* at ¶ 7.)

Onyiuke received emails confirming his flight arrangements as well as a "paper ticket" from Cheaptickets.  (*Id.* at ¶¶ 8-9.)  On or about November 7, 2008, Continental Airlines discontinued service between Newark Liberty International Airport and Gatwick Airport. (*Id.* at

---

[2] Defendant Cheaptickets also contends that Onyiuke's suit warrants dismissal under FRCP Rule 12(b)(3) because the District of New Jersey is an improper venue for this action.  Cheaptickets argues that by entering into the electronic contract, Onyiuke bound himself to the contract's forum selection clause, which provided that any lawsuit stemming from the contract can only be brought in the state of Illinois, where Cheaptickets is headquartered. (Cheaptickets' Br. 10.)  The Court need not address this argument because it finds that all claims against Cheaptickets should be dismissed under Rule 12(b)(1).

¶ 23.)  Cheaptickets notified Onyiuke about this change in service on December 3, 2008  (*id.* at ¶ 10) and offered a modified flight arrangement (whereby Onyiuke would have to provide his own transportation from Heathrow Airport to Gatwick Airport in order to catch his connecting flight to Nigeria).  (*Id.* at ¶¶ 12-14.)  Alternatively, Cheaptickets offered to refund the full cost of his flight.  (*Id.* at ¶ 16.)  He refused to accept either alternative.  (*Id.* at ¶¶ 15-16.)

The following day Onyiuke contacted Cheaptickets customer service and was again offered a refund.  (*Id.* at ¶ 19.)  He alleges that Cheaptickets told him that Virgin Atlantic and Virgin Nigeria had cancelled both of his flights. (*Id.*)  Following this conversation, Onyiuke contacted Virgin Atlantic which informed him of Continental Airline's flight modifications and stated, contrary to what he was told by Cheaptickets, that his flights had not been irreversibly cancelled.  (*Id.* at ¶¶ 23-24.)  He and Cheaptickets had an additional interaction whereby Onyiuke was again offered a refund.  (*Id.* at ¶ 30.)  After refusing to accept Cheaptickets' offer for a third time, Onyiuke booked an alternative flight with a different travel agent for $3,163.29. (*Id.* at ¶ 32.)  He then demanded an immediate refund from Cheaptickets (*id.* ¶ 33-34) and was told again that the company would be willing to provide such a refund.  (*Id.* at ¶ 35, 37.) Onyiuke subsequently initiated the present action.

## III.   STANDARD OF REVIEW

Rule 12(b)(1) of the FRCP permits courts to dismiss a complaint for "lack of subject-matter jurisdiction."   Challenges to subject matter jurisdiction under Rule 12(b)(1) may "facially" attack "the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true."  *Turicentro, S.A. v. Am. Airlines Inc*., 303 F.3d 293, 300, n. 4 (3d Cir. 2002). Essentially, a "facial" challenge by a defendant contests the adequacy of the pleading as it pertains to subject matter jurisdiction.  *Id.*  The party asserting jurisdiction bears the burden of

demonstrating that jurisdiction is proper. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

Similarly, Rule 12(b)(6) permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A complaint should be dismissed if the plaintiff's allegations, taken as true, fail to state a claim.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 (3d Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## III.   DISCUSSION

### A.   Lack of Subject Matter Jurisdiction

Diversity jurisdiction is properly invoked, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between: (1) citizens of different states." 28 U.S.C. § 1332(a).  There is no dispute that complete diversity exists among the parties.  Rather, the question for this Court is whether the amount in controversy necessary to establish diversity jurisdiction has been met.

Onyiuke demands identical damages of $127,793.57 from each defendant, Cheap Tickets and Virgin Atlantic, for breach of contract and conversion.  Under counts one and three of the

complaint for breach of contract, he requests nominal damages of $5,000, actual damages of $4,691.10 (triple the amount of his canceled ticket), special damages of $4,798.77 (triple the loss of the bargain suffered), $25,000 damages for mental agony, and court costs of $350.00. (Am, Compl. ¶¶ 60, 80.)  In Onyiuke's initial complaint, he brings two conversion claims, counts two and four, in which he requested general damages of $5,000, actual damages of $1,563.70, punitive damages of $50,000, and court costs of $350.00.  (Compl. ¶¶ 72, 85.)

Onyiuke later amended his complaint to include a $260 claim of legal fees to each of the four counts, as well as an additional $30,000 in punitive damages on his conversion claim. (Am. Compl. ¶¶ 72, 85.)   After deducting costs pursuant to 29 U.S.C. § 1332, Onyiuke claims $252,007.14 as the entire amount in controversy.  Defendants argue that Onyiuke's damages are overstated for the sole purpose of meeting the $75,000 threshold necessary to invoke this Court's diversity jurisdiction.

For purposes of diversity jurisdiction, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  *St. Paul Mercury Indemnity Co.v. Red Cab Co*., 303 U.S. 283, 288 (1938). To justify dismissal for lack of subject matter jurisdiction, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* at 289. The Third Circuit has held that when the claimed "punitive damages [are] 'patently frivolous, without foundation' because such damages are unavailable as a matter of law, *that claim must be stricken from the amount in controversy."  Packard*, 994 F.2d at 1046 (emphasis added).  "[W]hen it appears that such a claim compromises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Id.*

As stated, Onyiuke seeks punitive damages for the tort claim of conversion. (Am. Compl. ¶¶ 72, 85.) Under New Jersey law, punitive damages are available in a conversion claim if a plaintiff adequately demonstrates

> by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J. Stat. § 2A:15–5.12(a) (2009); *Winkler v. Hartford Acci. & Indem. Co.*, 66 N.J. Super. 22 (App. Div. 1961); *Mogen David Casket Co. v. Gibbons,* 2005 WL 3691193 (N.J. Super. Ct. App. Div. Jan. 20, 2006). Actual malice is defined under New Jersey law as "an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. § 2A:15-5.10. Further, wanton and willful disregard is a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.* Circumstances of aggravation and outrage, beyond the simple commission of a tort, are required for an award of punitive damages. *Dong v. Alape*, 361 N.J. Super. 106, 116 (App. Div. 2003) (prima facie case for punitive damages established because driver of motor vehicle exhibited wanton and willful disregard for others).

In the present case, Onyiuke merely alleges that defendants' 60-day refund policy is unreasonable, illegal and unconscionable. (Am. Compl. ¶ 4.) For purposes of this motion to dismiss, this "Court must accept the facts plead as true, [but] the Court need not accept conclusory legal assertions." *Berroll v. AIG*, 2007 WL 3349763, at *4 (D.N.J. Nov. 7, 2007). Therefore, Onyiuke's blanket assertions, by themselves, do not prove eligibility for punitive damages. He has failed to allege any facts indicating that Cheaptickets acted with actual malice,

or wanton and willful disregard of persons who foreseeably might have been harmed.[3] Moreover, he can point to no aggravating factors that go beyond the simple alleged conversion. For this reason, his request for punitive damages is without foundation and is therefore stricken from the amount in controversy.

Onyiuke also requests damages of $25,000 from each defendant for "mental agony." Compl. ¶¶ 60, 80.)  To establish a claim for emotional distress arising from breach of a contract, a plaintiff must establish a defendant's intentional and outrageous conduct, proximate cause, and severe distress.  *Buckley v. Trenton Sav. Fund Soc*., 111 N.J. 355, 366 (1988); *Picogna v. Bd. of Ed. of Township of Cherry Hill*, 143 N.J. 391, 396 (1996).  "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Buckley*, 111 N.J. at 366 (*citing* Restatement (Second) of Torts § 46, cmt. d (1965)).  The emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it."  *Id.* (*citing* Restatement (Second) of Torts § 46, cmt. j).

Courts have the authority to reject claims for emotional distress if it deems the emotional distress not sufficiently severe.  *Id.* at 367.  Here, Onyiuke indicates that defendants' alleged breach resulted in the aggravation of dealing with customer service, "mental anguish arising from the loss of a bargain," as well as embarrassment from having to borrow money from friends and relatives, as well as stress and inconvenience. (Pl.'s Opp. Br. at 4.)  His claims amount to distress over being temporarily inconvenienced.  Under New Jersey law, "complaints [that] amount to nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" do not amount to severe emotional distress.  *Buckley*, 111 N.J. at 368.

---

[3] Additionally, the fact that Continental Airways, and not one of the defendants, cancelled the flight from Newark to Gatwick Airport, and that both parties indicated their willingness to refund Onyiuke's ticket price undercut any such claim that he could make.

Additionally, as required under New Jersey law for a viable claim of emotional distress, Onyiuke "does not claim any interference with his every day routine as a result of his mental distress." *Id.* at 369.

To be sure, Onyiuke's reason for traveling to Nigeria was personally important. His requests that Cheaptickets "troubleshoot" to find alternate arrangements more to his liking; however, demonstrate a level of sophistication that suggests he was aware that there are alternate, although less economically efficient, carriers to Lagos, Nigeria. (Am. Compl. ¶ 17.) Airlines, and indeed all common carriers, are subject to scheduled and unscheduled service changes.[4] These are not so outrageous as to cause emotional distress, especially given that other airlines service similar routes. Essentially, Onyiuke is harmed because he had to spend twice as much to travel by another carrier. He has not shown the defendants' conduct was so grossly inappropriate that it can be said to be atrocious. For this reason, his requested damages for "mental agony" will be stricken from the amount in controversy.

After striking the demands for punitive damages and damages for mental agony, the entire amount to controversy is well below the jurisdictional minimum.[5] Although Onyiuke may have a cause of action against defendants, it cannot lie in federal court because he has not met his burden of showing that the amount in controversy exceeds $75,000. Accordingly, this complaint is dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

---

[4] In fact, Virgin Airlines expressly reserved a right to change flight arrangements in the "paper ticket" sent to Onyiuke. (*See* Am. Compl., Exh. C, at 6.)

[5] Several of Onyiuke's other damage claims also have no basis in law. For example, his claims against both Virgin Atlantic and Cheaptickets are impermissibly duplicative of seek relief from the same wrong. *Dimaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 574 (2001) ("when a plaintiff has obtained full satisfaction for an injury, then he or she may not obtain a double recovery from another liable party"). He also asks for nominal damages that are greater than his actual damages, while concurrently asking for actual damages. Restatement (Second) of Contracts § 346(2), cmt. b (1979) (nominal damages are "a *small amount* fixed without regard to the amount of loss" awarded *in lieu of actual damages* (emphasis added)). As a matter of law, Onyiuke may not recover on the claims of breach and conversion twice, nor could he recover both nominal and actual damages.

IV.     **CONCLUSION**

For the forgoing reasons all of Onyiuke's claims are **dismissed** pursuant to Fed. R. Civ.

P. 12(b)(1) for lack of subject matter jurisdiction.[6]

An appropriate order will be entered.

<u>/s /Katharine S. Hayden</u>

Katharine S. Hayden, U.S.D.J.

Dated: December 31, 2009.

---

[6] Virgin Atlantic has submitted a brief arguing that argues that Onyiuke's claims against it should be dismissed under Rule 12(b)(6) because they are preempted by federal law, citing the Airline Deregulation Act ("ADA"), which prohibits a state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . ."  49 U.S.C. § 41713(b)(1).  In light of the Court's decision on subject matter jurisdiction it need not reach this issue.